Ruffin, Chief Justice,
after stating the case as above, proceeded as follows: As the parties have not been represented by counsel, we are somewhat at a loss how; we are to regard the objection taken under the plea of nultiel record, and the decision made by his Honor. If it was intended to raise the question, whether upon such a reference as that before us, judgment in the.cau'se according to the award is the legal method of enforcing it, instead of an attachment: the answer is, that from a period so early, that none of the profession know when it did not exist, the practice in this State has been to enter a judgment in the cause for the debt or damages awarded. It probably had its origin in consent, as a confession of judgment; which the party preferred to being exposed to process of contempt. But however it arose, it has received the approbation of the courts; and it is now the constant usage, Simpson v. McBee, 3 Dev. 531; and it is too late to question it as a proper method of proceeding on awards.
■ It may have been intended to object to the form of the judgment as an entry.' If so, it must be admitted to be informal and insufficient in its present shape. But we do not like, and indeed, without the points being unequivocally taken, we cannot assume the objection to bo of that kind.— The indulgence of the members of the profession towards each other is notorious, as the chief cause why the pleadings and entries in our Courts are not more fully and accurately drawn out; and it is not to be believed that gentlemen of the bar could be prevailed on to take an advantage of a laxity in their own practice, which is nearly universal. But if they were so inclined, the courts, we think, would hardly yield to *11 it, since the Judges would be bound to protect suitors and purchasers under judicial proceedings from an objection such extensive operation, if legitimate means could be devised to that end. This may be done, by observing the method that has heretofore prevailed; which is, not to such an entry as the entry of the judgment, properly speaking, but as a minute of which the import is well understood, and from which the judgment might be formally drawn out. Upon an objection of the kind supposed, the court would, of course, allow time to make up and engross the record; and, therefore, such minutes have been usually received upon the trial as evidence, as the record would be, were it complete. We must suppose that such would' have been the course here, if the objection had been of this character; therefore, we infer that it was not; and that the more readily, because the court did not adjudge distinctly that there was not such a record. We presume, therefore, that the pinion of the court was given on the other point; namely, the effect of the reference on the undertaking of the bail:- which we will now proceed to consider.
The^ nature íhe infoi™fajudg.‘nes considered, “ddlehof a. yo!fJins oi> them, point-0111,
The point is without authority in this State, as far as the members of the court know. Neither of us recollects any decision on it, nor even its having been raised. We find it, indeed, so stated in the books, that we must receive it as set, tied law in England, that when a cause is referred to arbitration the bail is discharged, unless a verdict be taken for the plaintiff, to stand as a security for what may be awarded. 2 Sand. 72, a note. It is somewhat remarkable, that in the note in which this passage occurs, Sergeant Williams enumerates. several instances of the bail being discharged by acts or inadvertences of the plaintiff, for each of which, except this one of a reference, adjudications are quoted as authority. For this one, neither authority is cited nor reason given.. We have not, ourselves, succeeded in our search for an adjudication on the point. It would be more satisfactory if the-ground of the rule could be found stated, as it is not so obvious, as not to leave some doubt as to its principle; and, at all events, we should then be better able to judge whether its principle made it applicable to us here. In England; thet *12 courts have always exercised an equitable or summary control over the recognizance of bail, in subjecting or exonerating the bail; and as to bail to the sheriff, the Slat. 4 Ann. c. I®’ expressly authorises the courts by rule or rules to give such relief upon the bond as is agreeable to justice and reason; and enacts that such rule or rules of court shall have the nature and effect of a defeasance to such, bonds. This relief is an instance of the exercise of this summary jurisdiction; and may have proceeded upon the idea, that the reference interfered with the regular legal progress of the suit, and might therefore bo an injury to the bail, in the nature of a giving of time to the principal. Yet there are objections to this supposition, which seem materially to impair its force. It is not, in the first place, understood how the bail can suffer prejudice from the act in question. The determination by arbitration is ordinarily not so dilatory as that by trial by jury, and we are not informed that a reference extinguishes or suspends the power of the bail over his principal, so as to discharge himself by a surrender. But in the second place, by the same passage, it appears that the bail is not discharged by a reference, provided a verdict, though by consent, be taken as a security; for upon it, after the award, judgment is entered up and execution sued, precisely as in other cases of verdicts, and all the usual remedies pursued against the bail. 2 Saund. 72, a note. Lee v. Lingaird, 1 East. R. 403. Now, the objection that the time has been enlarged by the plaintiff, seems to be justas applicable to one of those cases as to the other. It may affect the interests of the bail as materially, for the plaintiff to stay the proceedings after verdict, as before trial, by a reference. We are therefore not satisfied, that this is the reason of the rule; but suppose that it may rest on some other.
It has occurred to us, that perhaps the rule may have had its origin in the nature of the remedies on awards in the English Courts. They are, attachment for contempt by the suitor in not obeying the rule of court to perform the award; or an action on the submission or on the award; or entering judgment on the verdict taken as a security, and then raising by execution thereon the sum awarded. But there never is *13 judgment in the cause referred on the award, or “according to the award.” Then, except in the case of a verdict, there is no judgment in the action, in which the bail undertook for his principal, and, consequently, there is no condemnation for which the bail bound himself to be liable: and in the excepted case of a verdict and judgment, we have seen that the bail is liable, and is constantly proceeded against, as on judgments ordinarily.
But whether the rule in England rest on the one or on the other foundation, it ought not, we think, to prevail in this State, because here, neither oí those reasons has any application.
The power of the bail to surrender the principal, the periods and the places at which he may do it, and the consequences oí the surrender, are not, with us, dependent upon rules of Court which may be varied font time to time, nor even upon general reasons of right and justice; but they all arise out of a fixed statute law. It may be, in England, that the plaintiff is bound not to act against the defendant, while the proceedings are staid by a reference; and that during the same period, the bail also is in like manner restrained. But certainly it is not so here. The act of 1771, provides that the bail shall “ at any time before final judgment,” have power to arrest the principal to surrender him.
So, besides the English remedies on awards, it is the settled usage and must now be taken to be law, that the plaintiff may take judgment in the original action for debt or damages awarded, as well where Ihe reference is without, as when it is after a verdict. There is then a condemnation of the defendant, of record, which brings the case within the contract oí the bail to pay the money, if the principal should not pay it or render himself a prisoner. We think, therefore, that the bail cannot be set free from his contract; no stipulation of which, in its letter or spirit, appears to be violated by the reference.
The judgment must be reversed, and the case go to another trial.
Per Curiam.
Judgment reversed.